IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.                               CRIMINAL ACTION NO. 2:19-cr-00250-3

Gary Conn

MEMORANDUM OPINION AND ORDER

Pending before the court is a Motion to Sever, [ECF No. 73], filed by Defendant Gary Conn. The Government has responded, [ECF No. 77], and the Motion is now ripe for adjudication. The Motion is **DENIED** for the reasons that follow.

I.    Background

On October 1, 2019, a federal grand jury charged Defendants James Pinson, Tammy Newsome, and Gary Conn with nine counts of wire and mail fraud in connection with a scheme to defraud Toyota Motor Sales, U.S.A. *See* Indictment [ECF No. 1] ¶¶ 67, 69. Defendant Newsome was also charged with one count of aggravated identity theft. *See id.* ¶ 71. On September 4, 2019, the federal grand jury charged Defendants Frank Russo and Kevin Fluharty separately for their alleged role in the same scheme. *See United States v. Russo*, No. 2:19-cr-222, [ECF No. 5] (Sep. 5, 2019). On February 27, 2020, Stanley Clark pleaded guilty to a charge in an information for his role in the same scheme. *See United States v. Stanley Clark*, No. 2:20-cr-00028, [ECF No. 12] (Feb. 27, 2020). On March 3, 2020, a federal grand jury returned a

Superseding Indictment against James Pinson, Tammy Newsome, and Gary Conn. The Superseding Indictment charges all three Defendants with the following: wire fraud in violation of 18 U.S.C. § 1343 (Counts One–Three); mail fraud in violation of 18 U.S.C. § 1341 (Counts Four–Nine); and aggravated identity theft in violation of 18 U.S.C. § 1028(a)(1) (Count Ten). Superseding Indictment [ECF No. 82] ¶¶ 66–79. The Superseding Indictment also charges Defendant Pinson with two counts of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Counts Eleven and Twelve) and charges Defendant Conn with one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Count Twelve).

### a. Factual allegations

The Superseding Indictment alleges the following. In 2008, Toyota began a Customer Support Program (the "CSP") to repurchase or repair a certain model of Toyota Tacoma trucks that exhibited rust perforation on the vehicle's frame. *Id.* at ¶ 4. "If an individual customer owned the truck, Toyota repurchased it at 150% of the Kelley Blue Book Suggested Retail Value of an 'excellent' condition truck, regardless of its actual condition. In contrast, if a dealership owned the truck, Toyota would only reimburse the dealership's actual cost of purchasing the truck." *Id.* at ¶ 6. "Toyota hired Impartial Services Group ("ISG") to administer the Customer Support Program." *Id.* at ¶ 8.

Defendant Pinson owned a Kentucky car dealership called Big Blue Motor Sales ("Big Blue Motors"). *Id.* ¶¶ 9–11. Defendant Conn was the dealership's sales manager and Defendant Newsome was an employee of the dealership. *Id.* According

to the Superseding Indictment, between 2013 and 2015, Pinson, Conn, and Newsome, along with others charged and uncharged, allegedly engaged in a fraudulent scheme with the following general steps:

1. Defendants caused Big Blue Motors to buy hundreds of Toyota Tacomas at wholesale prices.

2. Defendants Pinson and Conn obtained copies of unwitting individuals' driver's licenses.

3. Next, Defendants Newsome and Pinson fraudulently titled the Tacomas in the names of "false owners"—acquaintances or unwitting customers of Big Blue Motors. These false owners typically never possessed or even saw the Tacomas they purportedly owned. In at least one case, Defendant Newsome stole the identity of a Big Blue Motors customer and used the identity to fraudulently title a truck. To complete the fraudulent title and registration applications, Defendant Newsome provided false or fraudulent West Virginia addresses and insurance information. Defendant Newsome also forged the false owner's signatures.

4. Defendants Pinson or Newsome bribed Frank Russo, a service manager from a Toyota dealership in St. Albans, West Virginia, who was responsible for inspecting the Tacomas for qualification under the CSP for Tacomas with excessive frame rust, to submit information to Toyota via ISG. Defendants Pinson or Newsome also bribed Stanley Clark, an ISG representative, for his participation in the scheme. Clark, in turn, bribed a

notary, Kevin Fluharty, who forged and notarized the signatures of false owners on documents.

5. Defendants Pinson and Newsome then falsely represented to Toyota that the false owners actually owned the Tacomas and thereby induced Toyota to repurchase the Tacomas at 150% of Kelley Blue Book Value under the Toyota CSP.

6. Defendants caused thousands of documents to be forged and falsely notarized, and then submitted them to Toyota via ISG. Defendants fraudulently induced Toyota to repurchase 350 trucks during the 2013 to 2015 period.

7. Defendants Pinson or Newsome then forged the false owners' signatures on checks issued to the false owners and deposited the money in Big Blue Motors' bank account.

See id. ¶¶ 1–32. The Superseding Indictment alleges three specific instances of Defendants' scheme to defraud. Id. at ¶¶ 32–65.

II. **Legal Standard**

Rule 8(a) states that two or more defendants may be charged in the same indictment or information if "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(a). "There is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993). Joint trials "play a vital role in the criminal justice system." Id. "Joinder is particularly favored in conspiracy cases." United States v. Montgomery, 262 F.3d

4

233, 244 n. 5 (4th Cir. 2001). But "[i]f the joinder of ... defendants in an indictment ... appears to prejudice a defendant or the government, the court may ... sever the defendants' trials." Fed. R. Crim. P. 14(a). The party seeking severance "has the burden of demonstrating a strong showing of prejudice." *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984).

"It is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540 (1993). Furthermore, showing prejudice does not guarantee severance. *Id.* In *Zafiro*, the Supreme Court reasoned that, "[w]hen the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson v. Marsh*, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *See id.* (citing 481 U.S. 200, 211 (U.S. 1987)).

### III. Discussion

Defendant Conn makes three arguments in support of his Motion to Sever. First, he argues that trying the cases in the same proceeding will deny him the right to the exculpatory testimony of Co-Defendant, James Pinson. *See* Def.'s Mot. and Mem. in Supp. of Mot. to Sever [ECF No. 73] 1. Second, he argues that trying the cases in the same proceeding will deny him his right to cross-examination regarding certain recorded statements of Co-Defendant Pinson. *Id.* Third, he argues that trying the cases in the same proceeding will unfairly prejudice him by the admission of

voluminous alleged evidence of his Co-Defendants' purported wrongdoing, which Defendant Conn was not involved in. *Id.* I will address each argument in turn.

### a. Potential exculpatory testimony of Co-Defendant Pinson

"A defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Zafiro*, 506 U.S. at 539. To prevail on a motion to sever, based on the asserted need for a co-defendant's testimony, the moving defendant bears the burden of establishing all four of the following factors:

> (1) a bona fide need for the testimony of his co-defendant; (2) the likelihood that the co-defendant would testify at a second trial and waive his Fifth Amendment privilege; (3) the substance of his co-defendant's testimony; and (4) the exculpatory nature and effect of such testimony.

*United States v. Parodi*, 703 F.2d 768, 779 (4th Cir. 1983). The likelihood that the co-defendant would testify need not be established to "an absolutely certainty," instead a "reasonable probability that proffered testimony would, in fact, materialize and that co-defendant would have waived Fifth Amendment right at separate trial" is sufficient. *Id.* The exculpatory nature of the testimony must be "sufficiently definite" so as the trial court can evaluate the effect of the testimony and must amount to "more than vague and conclusory statement of counsel of facts of purely cumulative or negligible weight or probative value." *Id.*

If the moving defendant makes such a showing the court should then,

> (1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) assess the extent of prejudice caused by the absence of the testimony; (3) pay close attention to judicial administration and economy; (4)

6

>give weight to the timeliness of the motion, and (5) consider the likelihood that the co-defendant's testimony could be impeached.

*Id.*

Defendant Conn represents that Defendant Pinson intends to invoke his Fifth Amendment right not to testify at trial. Def.'s Reply to Resp. to Mot. to Sever [ECF No. 84] 1–2. Defendant Conn also represents that if the trials are severed, Defendant Pinson will waive his Fifth Amendment right and will testify to the following:

>1. Mr. Conn had no participation in, or knowledge regarding, an alleged scheme to defraud Toyota, and at all times Mr. Conn reasonably believed in the legality of Big Blue Motor's participation in the truck buyback program both directly and by transferring ownership and title to others.
>
>2. Mr. Conn's payment to any individual to obtain their permission to title such vehicle in the individual's name was done at the direction of Mr. Conn's employer and as an employee Mr. Conn was expected to comply with his employer's directive.
>
>3. Mr. Conn had no knowledge that titling vehicles in another person's name was allegedly illegal.
>
>4. Mr. Conn had no participation in, or knowledge regarding, an alleged bribery of a Toyota dealership employee;
>
>5. Mr. Conn had no participation in, or knowledge regarding, an alleged bribery of an ISO employee and did not even know the identity of this individual;
>
>6. Mr. Conn had no participation in, or knowledge regarding, an alleged bribing of a notary;
>
>7. Mr. Conn had no participation in, or knowledge regarding, alleged forgery of false owner's signatures on checks deposited into Big Blue Motor's bank account.

*Id.*

I do not find that Defendant Conn will be denied a fair trial if there is not severance and a separate trial. First, I find it prudent to note that some of the statements to which Defendant Pinson will allegedly testify appear inadmissible. It is well established that lay witnesses may testify only to matters of which they have personal knowledge. *See* Fed. R. of Evid. 602. Therefore, Defendant Pinson could not testify to Defendant Conn's mental state or knowledge of any alleged facts.

Moreover, turning to the second factor outlined in *Parodi*, I cannot find that Defendant Pinson is reasonably likely to waive his Fifth Amendment privilege and present exculpatory testimony. The fact that Defendant Pinson will likely invoke his Fifth Amendment right not to testify at the joint trial indicates that he would condition his testimony on being tried first. *See Parodi*, 703 F.2d at 781 ("…it is highly unlikely that [the co-defendant] Conway would have testified so long as any charges remained open against him."); *United States v. Dawson*, No. 5:12-CR-284-F2, 2013 WL 3381380, at *2 (E.D.N.C. July 8, 2013) ("If Pressley intends to invoke his Fifth Amendment privilege at a joint trial, then the court can think of no reason why he would waive the privilege by testifying at Dawson's trial in the event Dawson was tried first."); *see also Rogers v. United States*, 340 U.S. 367, 373 (1951) ("[W]here criminating facts have been voluntarily revealed, the [Fifth Amendment privilege against self-incrimination] cannot be invoked to avoid disclosure of the details."). The majority of the proffered testimony of Defendant Pinson would require him to admit that there was a scheme to defraud and that that scheme involved identity theft. Accordingly, there is no reason to believe that Defendant Pinson would offer this

8

testimony unless he was tried first. And "the requirement of a showing of willingness to testify if there is a severance is not met when that offer to testify is further conditioned on the co-defendant's case being tried first." *Parodi*, 703 F.2d at 779.

Because Defendant Conn has not met the second factor of *Parodi*, I need not reach the rest of the analysis. I **DENY** Defendant Conn's Motion to Sever based on the exclusion of potential exculpatory testimony of his co-defendant.

### b. The Confrontation Clause

Under some circumstances, the Constitution requires severance. *See Bruton v. United States*, 391 U.S. 123, 126 (1968). The Confrontation Clause of the Sixth Amendment guarantees criminal defendants the right of cross-examination of the witnesses against him. *See id.* "In *Bruton v. United States*, the Supreme Court acknowledged that the prejudice resulting from the introduction of a non-testifying codefendant's confession that directly implicates the defendant is so severe that even when the jury is instructed to consider the confession only against the codefendant, the other defendant's Sixth Amendment right to confrontation is necessarily violated." *United States v. Min*, 704 F.3d 314, 319–20 (4th Cir. 2013) (citing *Bruton*, 391 U.S. at 135–37). "A *Bruton* problem exists only where a co-defendant's statement on its face implicates the defendant." *United States v. Najjar*, 300 F.3d 466, 475 (4th Cir. 2002).

"Limiting instructions do not prevent or cure prejudice that results when statements that directly incriminate co-defendants are introduced into evidence at a joint trial and the declarant is not available to testify or to be cross-examined." *United*

9

*States v. Truslow*, 530 F.2d 257, 260 (4th Cir. 1975). In some instances though, the co-defendant's statement may be redacted to eliminate the unfair prejudice to the defendant. *See id.* Such a redaction, however, must be more effective than merely removing the defendant's name, creating an obvious blank that notifies the jury that a name as been deleted. *Min*, 704 F.3d at 320.

Here, the Government represents that it intends to use at trial a recording of a conversation between Co-Defendant Pinson and Frank Russo, who is not a defendant in this case. Gov't.'s Resp. to Def.'s Mot. to Sever [ECF No. 77] 5. The transcript of the recording does not implicitly or explicitly refer to Defendant Conn. *See* Ex. A, Tr. of Sept. 8, 2015 Russo-Pinson Recording [ECF No. 77–1]. At best, Defendant Conn argues that he is implicated by Pinson's references to multiple people's involvement in the conduct at-issue. It is true that Pinson refers to "we," "us," and "everyone" throughout the recording. The Fourth Circuit, however, has held "admissible a codefendant's redacted statement that referred to the existence of another person through neutral phrases." *Min*, 704 F.3d at 320–21 (citing *United States v. Akinkoye*, 185 F.3d 192, 198 (4th Cir.1999)). As with the case in *Min*, the recording here refers generally and without facial incrimination "to some number of individuals who could, or could not, be the other [D]efendants." *Id.* at 321. I therefore do not find a that the introduction of the recording poses a *Bruton* problem. Accordingly, the Motion to Sever is **DENIED** on this basis.

### c. Defendant Conn's limited role in alleged conduct

The Supreme Court has contemplated the risk of prejudice posed by different degrees of culpability between co-defendants. *See Zafiro*, 506 U.S. at 539. In *Zafiro*, the Court reasoned, "evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Id.* However, "[w]ithout a strong showing of prejudice, severance is not justified based on the mere disparity of the evidence adduced against individual defendants." *United States v. Allen*, 491 F.3d 178, 189 (4th Cir. 2007).

Here, Defendant Conn argues that the vast majority of the factual allegations contained in the Indictment do not involve him. *See* Def.'s Mot. and Mem. in Supp. of Mot. to Sever [ECF No. 73] 3.[1] Defendant Conn further argues that the disparity in degree of involvement in alleged criminal activity between him and his Co-Defendants will cause the "unfair prejudice of 'guilt by association.'" *Id.* at 7. To require severance, a defendant must "establish that actual prejudice would result from a joint trial . . . not merely that a separate trial would offer a better chance of acquittal." *Reavis*, 48 F.3d at 767. I am unpersuaded that the risk of unfair prejudice is so strong as to justify severance in this case.

I find that limiting instructions will sufficiently cure any risk of prejudice that Conn will be convicted on the basis of spillover evidence admitted against his Co-

---

[1] The Superseding Indictment, [ECF No. 82], was filed after Defendant Conn filed his Motion to Sever, [ECF No. 73].

11

Defendants, Pinson and Newsome. The court will provide limiting instructions where appropriate. It is well established that the jury is presumed to follow the court's instructions. *See Zafiro*, 506 U.S. at 541; *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *United States v. Mir*, 525 F.3d 351, 358 (4th Cir.2008); *United States v. Brooks*, 957 F.2d 1138, 1145 (1992). Defendant Conn's Motion to Sever is **DENIED** on the basis that his role in the alleged criminal activity is more limited than that of his Co-Defendants.

### IV. Conclusion

Defendant Conn's Motion to Sever, [ECF No. 73], is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to Defendantd and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: May 27, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE